CHANCERY.

Case 96.

*May* 22.

The case stated.

## Gates and wife *vs* Jocob *et al.*

ERROR TO THE LOUISVILLE CHANCERY COURT.

*Limitation. Mortgagor. Assignee of mortgage. Equity jurisdiction. Infants.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

THIS is a suit in Chancery by *Gurden Gates* and *Rebecca J. Gates* his wife, who is the only surviving heir of *William Sullivan,* deceased, against many persons, for redeeming about thirty acres of land adjoining the ancient limits of the City of *Louisville,* and which had been conveyed, in 1803, by her said ancestor, as a collateral security, to *Arthur Campbell,* with express power to him and his assigns to sell, for paying about $800, the price for which the mortgagee had sold and conveyed the same land to the mortgagor.

In 1807, *Campbell* being about to sell in execution of the power, Gen. *William Clark,* for the purpose of guarding the interests of the infant children of *Sullivan,* who was then dead, advanced the sum still remaining due, and for his own indemnity, obtained an assignment of the mortgage with an express power to sell and convey the title in the mortgagee's name.

In 1808, *Clark,* at the instance of *Sullivan's* administrator, who seems to have had no assets, made a street through the land and sold it in three lots to three different purchasers, at auction, after full publication of the time,

place, and terms of sale; and as attorney in fact of *Campbell,* and in his name, conveyed to each purchaser the absolute legal title to the lot purchased by each of them, who immediately took possession thereof, adversely *in fact* to *Sullivan's* heirs, and which has been continued ever since, by themselves and their alienees.

GATES AND WIFE
*vs*
JACOB *et al.*

*Mrs. Gates,* who attained twenty-one years of age in 1825, (all her co-heirs having died in infancy and without any other heir than herself,) filed her bill in 1833, (before her intermarriage with Gates,) charging that the sale by *Clark* was invalid and injurious; that no legal title had passed by his conveyances, and that, even if such title had passed, it was, by an implied trust, subject to redemption.

These allegations were substantially denied, and the lapse of time pleaded as a conclusive bar by the principal defendants.

Answer relying on lapse of time.

The *Chancellor* dismissed the bill upon the plea of time, although he decided that Clark's sale had not extinguished the equity of redemption.

Decree of Chancellor dismissing bill.

It is our opinion that, though *Sullivan* and his heirs had a clear equity of redemption antecedently to the execution of the power to sell, yet the sales and absolute conveyances by Clark extinguished that equity and vested in the purchasers indefeasable titles, so far as the sales were valid.

*Mr. Powell,* in his treatise on mortgages, (10, 11, 12, 13,) suggests doubts whether an unconditional sale and conveyance by a *mortgagee,* in execution of a power given in the deed of mortgage, can divest the pre-existing equity of redemption; and he refers to the case of *Croft* vs *Powell, Comberback,* 603. But all that was judicially decided in that case was, that *the sale and conveyance having been expressly made, subject to the right to redeem,* the purchaser held the title, of course, as the mortgagee had held it, encumbered with the equity of redemption; and in the case of *Corder* vs *Morgan,* 18 *Vez.* 344, and in other cases, it has been decided that an absolute sale and conveyance by a mortgagee, in execution of a power given in the deed of mortgage thus to sell and convey, vested an irredeemable title in the purchaser. Can any other

GATES AND WIFE
*vs*
JACOB *et al.*

Mortgage for land made in 1803, with power to mortgagee or his assigns to sell and convey, assigned in 1807, assignee of mortgage sells and conveys in 1808, such sale and conveyance in the name of morgagee by assignee as his attorney in fact, is valid, and vests the legal title in the purchaser.

doctrine be reasonable or just? or is any other consistent with analogy or authority? We think not.

The assignment to *Clark* vested in him the beneficial interest of the mortgagee, who still retained the legal title, and it transferred also the power to sell and convey in the mortgagee's name, especially as that power was given by the mortgage to *Campbell* and *"his assigns."* It seems to us, therefore, that the sales and conveyances by *Clark* had the same effect as the like acts by *Campbell* himself would have been entitled to have.

Nor are we satisfied that, in any other respect, there was any essential non-execution or mis-execution of the power. The Chancellor seemed to think that, as the mortgage gave no express authority to open a street or sell in parcels, the sale, as made, was not a valid execution of the power to sell. But it appears that the opening of the street and the sale by parcels, were intended for the benefit of *Sullivan's* heirs, and probably did operate beneficially to them. Then, were it conceded that there was not a precise execution of the power, still, as what was done was evidently done in good faith and in substantial fulfilment of the end of the power, a Court of Equity might sustain it, as such a tribunal might have authorized it in the first instance had a bill been filed for obtaining such preliminary sanction.

In cases of concurrent jurisdiction equity will not relieve where remedy at law has been lost by lapse of time, except cases of fraud, (or perhaps mistakes,) where equity dates the right of action at the time of the discovery of the fraud.

In cases of exclusive jurisdiction the Chancellor usually applies lapse of time as a bar to right of entry on land, right of mortgagor to redeem, &c. and 20 years adversary holding, and lapse of

But if we may be mistaken in the conclusions just suggested, we are of the opinion that the claim sought in the bill is barred by adversary possession and lapse of time.

The statute prescribing limitations to *"actions"* does not, *proprio lege,* embrace *suits* in equity. And were there no other proof of this position, it would clearly result from the fact that, in a comprehensive class of cases of concurrent jurisdiction, to which the statute should be applied more strictly than to cases in which there is no legal remedy, Courts of Equity have established an exception not embraced in any of the savings of the statute—that is, that time begins to run against a bill for *fraud,* not as at law, from the perpetration of the fraud, but only from the discovery of it. It is historically, as well as intrinsically evident that, long after the enactment of the statute of limitations of *James* in

*England*, Courts of Equity began, voluntarily, to adopt the statute *by analogy*, but with such equitable qualifications as to effectuate its spirit and policy, and prevent the perversion of its letter; and consequently, the following rules have been established in equity, by long practice and repeated recognitions: 1st. In cases of concurrent jurisdiction, as it would be unreasonable to allow the remedy in equity after that at law, upon the same right, had been barred by the statute, the limitation will be inflexibly applied in a Court of Equity, precisely as it operates at law, with the exception of cases of fraud, and probably mistake, in which the reason of the statute, contrary in this respect to its letter, dates the bar from the discovery, before which there could have been no suit. 2nd. In cases of exclusive jurisdiction in equity, *in which there has been no proof of adverse possession in fact*, such as *mortgages* and technical *trusts, there being no legal analogies*, Courts of Equity, feeling the necessity of some uniform prescriptive limitation, and considering that of twenty years as prescribed by the Legislature against the right of entry on land altogether reasonable, have adopted that period, not however as a peremptory statutory bar, but as *prima* evidence of a presumptive bar, and which may, therefore, be defeated generally *by any fact* tending to authorize a countervailing presumption—thus, for example, a possession for twenty years by a mortgagee will, *per se*, create a legal presumption that the equity of redemption had been released and that the possession, which in its origin was amicable, had been adverse during the entire duration of it, or for twenty years; and the like possession by a mortgagor for twenty years, after the debt became due, will create the presumption that the debt was paid at maturity, and that, therefore, the mortgage was extinguished and the possession had been adverse to the mortgagee; and so too, though a subsisting *trust* will not be barred by twenty years, yet a possession by the trustee for twenty years, without any fiducial act or recognition, may authorize the presumption that the trust had been fulfilled or extinguished; but proof of an adverse possession in fact, for twenty years, even by a trustee, will operate as effectually as a statutory bar.

GATES AND WIFE
*vs*
JACOB *et al.*

twenty years after mortgage, debt due has been considered as creating a presumption against the right to redeem in the latter and right of entry in the former.

MILLION
*vs*
COM'TH. &c.

20 years adverse possession succeeding an actual or virtual disseisin, operates as a bar in equity as at law.

3rd. In cases of exclusive cognizance in equity, as already intimated, an adverse possession in fact, for twenty years succeeding an actual or virtual disseisin will, by analogy, operate against a suit in equity as strictly and inflexibly as the like possession would operate against an action at law, had the title been legal instead of equitable only.

And it is well settled that, whether time operates presumptively or peremptorily in equity, the rule as to statutory disabilities will be applied; and that, therefore, there will be no lapping of disabilities in equity any more than at law.

Infants, &c. only allowed 3 years after they arrive of full age to sue for lands.

However the original right of *Mrs. Gates* be considered, therefore, it must be deemed to have been barred when her bill was filed in 1833; for the statute of 1814 allowed only three years after she became twenty-one years old, and there can be no doubt that an adverse possession commenced in 1808, and has been continued ever since; and consequently, as twenty full years had run from the commencement of the adverse possession to the year 1828, when the three years saved to her had expired, the bar was complete and conclusive when she instituted this suit in 1833.

Wherefore, the Chancellor's decree is affirmed.

*Guthrie* and *Loughborough* for plaintiffs: *Pirtle* and *Nicholas* for defendants.